## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| UNITED STATES OF AMERICA | * | |
| v. | * | CRIM. NO.  JKB-15-0462 |
| RAYMOND AIGBEKAEN, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM AND ORDER

Presently pending before the Court is Raymond Aigbekaen's Motion to Vacate Pursuant to 28 U.S.C. § 2255 (ECF No. 454) as supplemented by subsequent filings. (*See* ECF Nos. 467, 480.) Aigbekaen has also filed a Motion for Bail Pending Disposition of his § 2255 Motion (ECF No. 540)—which is mooted by disposition of his § 2255 Motion[1]—and a Motion for Sanctions Under 28 U.S.C. § 1927.[2] (ECF No. 555.) In addition to these Motions, Aigbekaen has filed numerous correspondences reiterating the claims made in his § 2255 Motion and, occasionally, raising new arguments for the Court's consideration. (*See, e.g.*, ECF Nos. 460, 461, 463, 471, 472.) Though the Court has fully considered these additional correspondences, it addresses them only to the extent that they raise arguments not already made in Aigbekaen's Motion and principal Supplements. For the following reasons, all of Aigbekaen's Motions will be DENIED.

---

[1] The Court previously denied on the merits similar motions. (*See, e.g.*, ECF No. 464.)

[2] In this Motion, Aigbekaen also seeks sanctions for alleged misconduct in a civil suit seeking the return of certain property. *See Aigbekaen v. United States*, Civ. No. JKB-21-2890 (D. Md. filed Nov. 10, 2021). This Memorandum does not address that aspect of Aigbekaen's Motion for Sanctions.

1

## I.    *Background and Prior Proceedings*

On August 25, 2015, a grand jury in the District of Maryland indicted Aigbekaen on six

Counts related the sex trafficking of a minor, "L." (*See* ECF No. 1.)[3]  After trial, a jury convicted

Aigbekaen on all Counts, but found him not guilty of the more serious charge of "sex trafficking

by force, fraud or coercion" alleged in Count 3. (*See* ECF No. 189); *see also* 18 U.S.C. § 1591(b)

(providing a fifteen (rather than ten) year mandatory minimum if the offense was "effected by

means of force, threats of force, fraud, or coercion"). The Court sentenced Aigbekaen to 180

months' imprisonment on Counts 1, 3, and 5, to run concurrently with each other and imposed

lesser sentences on the remaining Counts. (ECF No. 228.)  Aigbekaen appealed his conviction

and sentence. (ECF No. 234.)

### A. Direct Appeal

On appeal, Aigbekaen's appellate counsel raised two primary issues for review: (1) "Did

the lower court err in denying Appellant's motion to suppress historical cell site information

['CSLI'] obtained without a warrant?" and (2) "Did the lower court err in denying Appellant's

motion to suppress the warrantless search of a computer and phone seized from Appellant during

a border search?"  Appellant's Brief at 13, *United States v. Aigbekaen*, No. 17-4109 (4th Cir.

March 5, 2018), ECF No. 70 (hereinafter, "Appeal"). Aigbekaen also filed, *pro se*, at least three

supplemental briefs.  Appellant's Pro Se Brief, Appeal (4th Cir. July 2, 2018), ECF No. 97

(hereinafter "Pro Se Appellate Brief"); Appellant's Supp. Pro Se Br., Appeal (4th Cir. Aug. 20,

2018), ECF No. 120 (hereinafter "Pro Se Appellate Supplement"); Appellant's Supp. Pro Se Br.,

Appeal (4th Cir. Oct. 1, 2018), ECF No. 152.  After considering these initial filings, the Court of

---

[3] L. is referred to as "Victim 1" in the Indictment, but was generally referred to as "L." throughout the trial and direct appeal of this matter. *See, e.g., United States v. Aigbekaen*, 943 F.3d 713, 717 (4th Cir. 2019) ("On April 12, 2015, a sixteen-year-old girl (to whom we, like the parties, refer pseudonymously as 'L.') called 911 from a Homewood Suites hotel in Bel Air, Maryland.").  The Court adopts that same convention in this Memorandum.

Appeals entered an Order directing supplemental briefing "on the following issue: Did the warrantless non-routine border search, in which Defendant's laptop and cell phone were seized by customs agents and held for more than a week, necessitate a warrant?" Supp. Br. Order at 1, Appeal (4th Cir. Nov. 8, 2018), ECF No. 150.

After supplemental briefing, the Court of Appeals affirmed Aigbekaen's conviction by published opinion. *See United States v. Aigbekaen*, 943 F.3d 713 (4th Cir. 2019). In doing so, it principally focused on the parties' dispute related to the applicability of the border-search exception to the warrant requirement to the 2015 seizure of Aigbekaen's laptop and phone. *Cf. id.* at 719 n.3 (noting that Aigbekaen conceded that his CSLI claim was foreclosed by circuit precedent). While the Court of Appeals concluded that the warrantless seizure and search of these devices was not justified by the border-search exception, it further held that the government's good-faith reliance on prior precedent permitting such searches precluded application of the exclusionary rule to bar the evidence obtained therefrom. *See id.* at 723, 725. Given this, the Court of Appeals concluded that this Court did not err in denying the Motion to Suppress the fruits of this search (and other searches it precipitated). *Id.* at 726. In closing, the Court of Appeals also noted that "[i]n his *pro se* brief and supplemental briefs, Aigbekaen also raises a host of additional challenges to his conviction and sentence[]" and that after "examin[ing] Aigbekaen's contentions[,]" it found "no reversible error." *Id.* at 725 n.10. The Court of Appeals subsequently denied Motions by both parties seeking rehearing or rehearing en banc. Appeal (4th Cir. Feb. 24, 2020) (order denying rehearing), ECF No. 252.

### B. *Motion for New Trial*

In July 2019 (four months before the Court of Appeals' published opinion), Aigbekaen filed, *pro se*, a Motion for Judgment Notwithstanding the Verdict and a Rule 33 Motion for a New

3

Trial in this Court. (*See* ECF Nos. 345, 346.) The Court summarily denied both Motions, noting with respect to the Rule 33 Motion that "[t]hese issues have largely been addressed previously [and there] is nothing in this motion, factually or legally, that warrants relief." (ECF Nos. 347, 348.) Aigbekaen appealed these denials and the Court of Appeals remanded "to the district court for the limited purpose of entering an opinion and order enumerating each of Aigbekaen's claims and explaining why each such claim does not entitle Aigbekaen to relief." (*See* ECF No. 365.) In accordance with this mandate, on August 11, 2020, this Court entered a Memorandum and Order elaborating on its reasons for denying Aigbekaen's Rule 33 Motion. (ECF No. 411.)

### C. Habeas Petition and § 2255 Motion

On January 27, 2021, Aigbekaen filed a habeas corpus petition pursuant to 28 U.S.C. § 2241 in the United States District Court for the District of Connecticut. (*See* ECF No. 453 at 1.) Concluding that "petitioner's challenges to his conviction [raised in that petition] are properly brought in a section 2255 motion, not a section 2241 motion[,]" the Connecticut District Court recharacterized Aigbekaen's filing as a Motion to Vacate pursuant to 28 U.S.C. § 2255 and transferred it to this Court. *See* Ruling on Petition for Writ of Habeas Corpus at 4, 6–7, *Aigbekaen v. United States*, Civ. No. MPS-21-113 (D. Conn. May 12, 2021). On June 2, 2021, this Court directed the Government to respond to Aigbekaen's recharacterized § 2255 Motion within sixty days. (ECF No. 453.)

However, on July 15, 2021, Aigbekaen filed a Motion to Amend his § 2255 Motion stating that his original Motion did "not contain the important 2255 issues which the defendant intended to bring before the court." (ECF No. 467 at 1.) The Court directed the Government to respond to the procedural propriety of the Motion to Amend before its substantive response to Aigbekaen's reconstrued § 2255 Motion. (ECF No. 468.) In responding to the Motion to Amend, the

4

Government explained that it "does not oppose the Defendant's motion to amend[,]" but stated that this Court should provide Aigbekaen with *Castro* warnings because the Connecticut District Court did not do so when it recharacterized Aigbekaen's initial Motion. (*See* ECF No. 473 at 1);[4] *see also Castro v. United States*, 540 U.S. 375, 382 (2003) ("[A] district court may not recharacterize a pro se litigant's motion as a request for relief under § 2255—unless the court first warns the pro se litigant about the consequences of the recharacterization, thereby giving the litigant an opportunity to contest the recharacterization, or to withdraw or amend the motion."). In addition to their responsive brief, the Government provided a draft Order that included *Castro* warnings. (*See* ECF No. 475.)

Apparently reading this draft Order as an Order of this Court, Aigbekaen responded with a further amendment to his § 2255 Motion, stating that "[o]n August 13, 2021 by court order, the defendant was directed to 'withdraw his motion or amend it so that it contains all the 2255 claims he believes he has.' Defendant chooses to amend the motion and here-in lays out all of the 2255 claims." (ECF No. 480 at 1.) Out of an abundance of caution, this Court issued an Order reiterating the *Castro* warnings, providing Aigbekaen with a further opportunity to withdraw his § 2255 Motion to "avoid subjecting subsequent § 2255 motions to the bar on 'second or successive' motions" and setting in another briefing schedule if Aigbekaen opted to move forward with his § 2255 Motion as amended. (*See* ECF No. 486 at 3–4.) Aigbekaen subsequently submitted a correspondence to the Court confirming that he did not intend to withdraw his § 2255 Motion. (ECF No. 492.)

In addition to his two explicit amendments to his § 2255 Motion, on November 17, 2021, Aigbekaen filed a Motion styled as a Motion for New Trial Pursuant to Rule 33. (ECF No. 488.)

---

[4] The Government also took the position that any additional filings by Aigbekaen, whether in response to *Castro* warnings or otherwise, would likely be time-barred by 28 U.S.C. § 2255(f). (ECF No. 473 at 4.)

The gravamen of this Motion was that Aigbekaen had newly obtained information about his mental illness—in the form of a psychological evaluation performed in connection with prison disciplinary proceedings—that supported his previously-rejected claim that he was mentally incompetent to stand trial. (*See id.* at 1–3; ECF No. 488-1.)  Given the timing and substance of this Motion, however, the Court concluded that it was better characterized as a supplement to his pending § 2255 Motion and directed the Government to respond to it as such. (*See* ECF No. 494 at 3.)

The Government timely responded to these various filings on January 25, 2022, and opposed Aigbekaen's § 2255 Motion in its entirety. (*See* ECF No. 505.)  Contemporaneous with its opposition, the Government filed a Motion to Compel seeking to compel an attorney affidavit from Joseph Balter, Esq., Aigbekaen's trial attorney, regarding Aigbekaen's claim that Attorney Balter failed to communicate in writing one of the two plea offers made before trial. (ECF No. 508.)  The Court granted the Government's Motion to Compel. (ECF No. 518.)  Attorney Balter timely filed an affidavit on the requested subject matter (the "Balter Affidavit") and the parties submitted supplemental briefing regarding the effect of the Balter Affidavit on Aigbekaen's § 2255 Motion.  (*See* ECF Nos. 524 (affidavit), 534 (Government supplement); 551 (Aigbekaen supplement).)[5]  In addition to this supplemental briefing, Aigbekaen made several filings replying to the Government's Opposition and seeking summary disposition of his Motion. (*See* ECF Nos. 515, 520, 529, 531, 532.)

## II.    *Legal Standard*

When considering a § 2255 motion:

---

[5] There were some challenges providing Aigbekaen access to the Balter Affidavit due to the sensitive nature of the documents and Aigbekaen's transfer between BOP facilities. (*See* ECF Nos. 537, 550.)  As evidenced by the record, Aigbekaen was ultimately able to review this filing and provide a substantive response.

[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.

28 U.S.C. § 2255(b). To the extent that the court "denies § 2255 relief without an evidentiary hearing, the nature of the court's ruling is akin to a ruling on a motion for summary judgment, and the facts must be considered in the light most favorable to the § 2255 movant." *United States v. Nguyen*, 789 F. App'x 965, 966 (4th Cir. 2020) (internal quotation marks omitted) (citing *United States v. Poindexter*, 492 F.3d 263, 267 (4th Cir. 2007)). However, an evidentiary hearing is required where "the movant presents a colorable Sixth Amendment claim showing disputed facts beyond the record of when a credibility determination is necessary to resolve the issue." *United States v. Simmons*, 763 F. App'x 303, 304 (4th Cir. 2019) (citing *United States v. Witherspoon*, 231 F.3d 923, 926–27 (4th Cir. 2000)).

### III.    Analysis

In his various Motions, Aigbekaen raises more than a dozen reasons he argues entitle him to relief under § 2255. The Government rejoins that all of these claims are either untimely, procedurally defaulted, barred by prior adjudications by this Court or the Court of Appeals, meritless, or some combination thereof. Before turning to Aigbekaen's individual claims, the Court addresses to what extent Aigbekaen's filings are timely under 28 U.S.C. § 2255(f).

### A. Timeliness

Section 2255(f) provides that "[a] 1-year period of limitation shall apply to a motion under this section" and that this limitation period shall run from one of four enumerated categories of events. *See* 28 U.S.C. § 2255(f)(1)–(4). Here, the parties agree that the relevant trigger for the 1-year limitations period is "the date on which the judgment of conviction [became] final." *Id.* § 2255(f)(1). Like many other facets of this case, this issue has been the subject of numerous filings,

7

a review of which confirms that neither the parties, nor the Court, have been entirely correct as to when the 1-year period imposed by § 2255(f) expired.

### 1. Timeliness Under § 2255(f)

A conviction becomes final under § 2255(f) "when [the Supreme] Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or if a petitioner does not seek certiorari, when the time for filing a certiorari petition expires." *Gonzalez v. Thaler*, 565 U.S. 134, 149 (2012) (citation and internal quotation marks omitted). In its order converting Aigbekaen's Motion into one under § 2255, the Connecticut District Court noted that

> [t]he Fourth Circuit issued its decision affirming [Aigbekaen's] conviction on November 21, 2019. . . . The petitioner does not state that he filed a petition for certiorari and there is no reference in his criminal case to a petition being filed. Thus, his conviction became final on February 19, 2020, at the conclusion of the time within which the petitioner could have, but did not, file a petition for certiorari.

Ruling on Petition for Writ of Habeas Corpus at 6. In Motions and Orders following the conversion and transfer of Aigbekaen's Motion, both the Court and the Government adopted this timeliness assessment. (*See* ECF Nos. 473 at 4, 486 at 1.)

Following these preliminary discussions of timeliness, Aigbekaen filed correspondences disputing the conclusion that the deadline for a timely § 2255 motion was February 19, 2021. (ECF Nos. 492, 495.) In these correspondences, he argued that this deadline was premised on the erroneous notion that he did not file a petition for certiorari, which he in fact filed on April 22, 2021. *See* Supreme Court Remark—Petition for Writ of Certiorari Filed, Appeal (4th Cir. filed May 18, 2021), ECF No. 280 (noting petition had been filed on April 22, 2021).[6] The Court

---

[6] In later correspondences, Aigbekaen argues that this petition was timely filed because he sought—and allegedly received—an extension of time to file from the Supreme Court. (*See* ECF No. 530 at 4.) However, the only evidence provided in support of this argument is a correspondence from the Clerk of the Supreme Court stating that a September 23, 2020 "application for an extension of time within which to file a petition for a writ of certiorari . . . [was] returned . . . for the reasons previously stated in the September 2, 2020 correspondence." (ECF No. 495-1.) The underlying September 2, 2020 correspondence is not before the Court; however, the *return* of a pleading is not the equivalent of a *grant* of the same.

addressed this argument in a prior Memorandum and Order, concluding that an *untimely* petition for certiorari does not toll the limitations period under 28 U.S.C. § 2255. (ECF No. 497 at 1–3.) Because Aigbekaen filed his petition more than a year after the time prescribed by Supreme Court Rule 13.1, the Court further concluded that this "filing [was] not legally relevant to determining the deadline for [Aigbekaen's] § 2255 motion." (*Id.* at 2–3.)

This Memorandum and Order led to another round of correspondences from Aigbekaen where he raised additional arguments in relation to the timeliness of his § 2255 Motion. (*See* ECF Nos. 492, 495, 503, 514, 527, 530.) In these more recent correspondences, Aigbekaen argues that the time to file a petition for certiorari did not run from the Court of Appeals' initial affirmance of his conviction because both Aigbekaen and the Government filed petitions for rehearing—which were denied on February 24, 2020. Order Denying Motion for Rehearing, Appeal (4th Cir. filed Feb. 24, 2020), ECF No. 252. This extended the deadline for filing a timely petition for a writ of certiorari until May 24, 2020. *See* Notice of Judgment, Appeal (4th Cir. Filed Nov. 21, 2019), ECF No. 227-1 ("To be timely, a petition for certiorari must be filed in the United States Supreme Court within 90 days of this court's entry of judgment. . . . If a petition for panel or en banc rehearing is timely filed, the time runs from denial of that petition.").

Aigbekaen further explains that this change in deadline meant that the timeliness of his certiorari petition came within the scope of the temporary amendment to Supreme Court Rule 13 made on March 19, 2020. *See* Miscellaneous Order, 589 U.S. ___ (Mar. 19, 2020). That

---

This is true notwithstanding Aigbekaen's argument that the Supreme Court's March 19, 2020 Miscellaneous Order stated that "extensions that are based on COVID-19 difficulties will be granted as a matter of course." (ECF No. 530 at 4.) While other aspects of the March 19, 2020 Order affect the timeliness of petitions for certiorari, the language Aigbekaen relies on for this argument does not. Rather, this language discusses extensions sought "pursuant to Rule 30.4," a Rule that applies to extensions for the filing "any document or paper other than [*a petition for a writ of certiorari*, a jurisdictional statement, a reply brief on the merits, or a petition for rehearing of any judgment or decision.]" *See* Sup. Ct. R. 30.4 (emphasis added). Accordingly, it does not apply to Aigbekaen's filings or permit this Court to infer that those filings were granted. *Cf.* Sup. Ct. R. 13.5 ("For good cause, a *Justice* may extend the time to file a petition for a writ of certiorari for a period *not exceeding 60 days*.") (emphases added).

Miscellaneous Order, issued in light of the COVID-19 pandemic, extended "the deadline to file any petition for a writ of certiorari due on or after the date of this order [by] 150 days from the date of the lower court judgment, order denying discretionary review, or order denying a timely petition for rehearing." *Id.* at 1. Combined, these developments would render timely any § 2255 Motion filed before July 23, 2021, i.e., 150 days and one year after February 24, 2020. *See* 28 U.S.C. § 2255(f).

In its Opposition, the Government agrees with the first proposition—that the petitions for rehearing filed in the Court of Appeals delayed the entry of final judgment—but appears to disagree with the second, arguing that "Defendant had until May 25, 2021 to file his § 2255 motion." (*See* ECF No. 505 at 19 & n.9.) This disagreement is material as Aigbekaen's first amendment to his § 2255 Motion (which contains the significant majority of his claims) was filed on July 15, 2021. (*See* ECF No. 467.) Although the Government rejects Aigbekaen's view of the applicability of the Supreme Court's March 19, 2020 Order, it provides no reason that this Order would not apply to extend the deadline for a timely certiorari petition in this case. Having reviewed the relevant filings, the Court agrees with Aigbekaen's view insofar as he argues that the deadline for a petition for a writ of certiorari was July 23, 2020—and, accordingly, that any § 2255 Motion filed before July 23, 2021 is timely.

### 2. *Equitable Tolling*

A number of Aigbekaen's filings are nonetheless facially untimely under § 2255(f) because they were made after the July 23, 2021 deadline. (*See, e.g.*, ECF Nos. 480 (filed Sept. 21, 2021), 488 (filed Nov. 17, 2021).) Although Aigbekaen principally contends these filings are timely because of his petition for certiorari, he also argues that the Court should treat these filings as timely under a theory of equitable tolling. (*See* ECF No. 530 at 3–4.) "As a discretionary doctrine

that turns on the facts and circumstances of a particular case, equitable tolling does not lend itself to bright line rules." *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000). Nonetheless, it has typically been applied in "'two generally distinct kinds of situations. In the first, the plaintiffs were prevented from asserting their claims by some kind of wrongful conduct on the part of the defendant. In the second, extraordinary circumstances beyond plaintiffs' control made it impossible to file the claims on time.'" *Id.* (quoting *Alvarez-Machain v. United States*, 107 F.3d 696, 700 (9th Cir. 1996)). Aigbekaen argues that his claims are of the latter type as he seeks equitable tolling based on the challenges to timely filing imposed by COVID-19 and his relocation between places of incarceration. (*See* ECF No. 527 at 1.) A review of Aigbekaen's arguments and the record confirm that he has not met the "considerable burden to demonstrate that [this extraordinary remedy] applies." *Warfaa v. Ali*, 1 F.4th 289, 294 (4th Cir. 2021) (internal quotations and citation omitted).

As an initial matter, the only deadline that can be equitably tolled by this Court is that imposed by § 2255(f), i.e., the deadline to file a timely § 2255 Motion. *Cf. Whiteside v. United States*, 775 F.3d 180, 184 (4th Cir. 2014) (assessing "[e]quitable tolling of petitions for collateral review"); *United States v. Herrera-Pagoada*, 14 F.4th 311, 318 (4th Cir. 2021) (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010)) (emphasis added) ("A habeas petitioner 'is entitled to equitable tolling *of the statute of limitations* only if [two conditions are met].'"). At some points in his filings, Aigbekaen appears to claim that the relevant hardships delayed him in filing his certiorari petition and therefore the deadline for filing that petition should be equitably tolled. (*See* ECF No. 527 at 1 ("The petitioner also made numerous attempts to file the writ of certiorari but due to difficulties associated with the pandemic [he was unable to]. This was clearly out of his control.")) To the extent he presses this argument, it is defeated by the fact that this Court lacks

the authority to extend deadlines for filings before the Supreme Court. *See* Sup. Ct. R. 13.5 ("For good cause, a Justice may extend the time to file a petition for a writ of certiorari for a period not exceeding 60 days.").[7]

To the extent that Aigbekaen seeks to equitably toll the deadline for his filings that post-date July 23, 2021, the Court concludes that he has not shown that "extraordinary circumstance[s] stood in his way and prevented timely filing." *Whiteside*, 775 F.3d at 184 (internal quotation marks and citation omitted). Such circumstances are only found in "those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *Spencer v. Sutton*, 239 F.3d 626, 630 (4th Cir. 2001) (internal quotation marks and citation omitted). Such circumstances have not occurred here because, under this Court's conclusions regarding facial timeliness, the hardships imposed by the COVID-19 pandemic did not prevent Aigbekaen from filing a timely § 2255 Motion and a timely first amendment to the same. (*See* ECF Nos. 454, 467.) Thus, the claim that "extraordinary circumstances beyond his control [ ] prevented him from complying with the statutory time limit" is belied by the fact that Aigbekaen *was* able to timely file the vast majority of his claims. *Harris*, 209 F.3d at 330. Moreover, Aigbekaen has been a prolific filer in this Court both before and after the pandemic. Indeed, looking to either the period that Aigbekaen states he was impaired in filing a writ of certiorari (through April 22, 2021) or the 2255(f) period (through

---

[7] Read generously, Aigbekaen's correspondences also appear to argue that the *filing* of his April 22, 2021 certiorari petition implicitly granted his requests for extensions because Supreme Court Rule 13.2 provides that "[t]he Clerk will not file any petition for a writ of certiorari that is jurisdictionally out of time." (*See* ECF No. 527 at 1–2 ([T]he Court can [accept] the 150 day extension and the extension that was granted by the Supreme Court who docketed the writ of certiorari filed by the defendant[.]").) That said, the maximum extension that could be granted under Rule 13.5 is sixty days, and a longer extension would violate underlying statutory grants of jurisdiction. *See* 28 U.S.C. § 2101(c) ("A justice of the Supreme Court, for good cause shown, may extend the time for applying for a writ of certiorari for a period not exceeding sixty days."). Given this, the Court cannot conclude that the filing of Aigbekaen's certiorari petition should be read to have implicitly granted him a nearly nine-month extension of the filing deadline. Even to the extent that this is the case, the Court notes that all of the claims raised by Aigbekaen that it concludes are time-barred (based on a July 23, 2021 § 2255(f) deadline) are also substantively meritless.

July 23, 2021), the record reflects dozens of filings by Aigbekaen in this case alone. These many filings preclude the Court from finding that "extraordinary circumstances beyond plaintiffs' control made it *impossible* to file the claims on time." *Harris*, 209 F.3d at 330 (emphasis added) (internal quotation marks and citation omitted). While Aigbekaen's omission of certain claims from his first, timely amendment may have been inadvertent and unfortunate, these factors are insufficient to justify equitable tolling of the § 2255(f) deadline. *Id.* (rejecting broad application of equitable tolling because "[t]o apply equity generously would loose the rule of law to whims about the adequacy of excuses, divergent responses to claims of hardship, and subjective notions of fair accommodation").

Accordingly, the Court concludes that claims first made by Aigbekaen after July 23, 2021 are timely only if they relate back to a timely claim. *See Gray v. Banker*, 529 F.3d 220, 241 (4th Cir. 2008) ("An amendment to a habeas petition relates back under Rule 15(c)(2) when the new claim arises from the 'same core facts in time and type as the timely filed claims.'") (quoting *Mayle v. Felix*, 545 U.S. 644, 657 (2005)). Because relation back applies at the claim level, the Court will address relation back of facially untimely claims alongside the merits of those claims and, accordingly, now turns to a substantive assessment of Aigbekaen's claims.

### B. Merits

As noted, the majority of Aigbekaen's claims are raised in his timely first amendment to his converted § 2255 Motion. (*See* ECF No. 467 at 1 (explaining that "the 2241 that was presented to the Government does not contain the important 2255 issues which the defendant intended to bring before the Court").) This filing also contains what, based on a holistic assessment of Aigbkaen's filings, can be described as Aigbekaen's "core" claims; that is, a long-standing set of disagreements Aigbekaen has with his trial and sentencing. These claims are not new, and for the

13

most part have been presented both to this Court through Aigbekaen's first Rule 33 Motion and to the Court of Appeals through *pro se* briefing during Aigbekaen's direct appeal. Although these claims have sometimes been rephrased or reframed—for example, as the product of ineffective assistance of counsel rather than mere errors of the Court—their substance has remained consistent throughout the significant efforts Aigbekaen has invested in post-trial litigation. This prior consideration is largely dispositive of these claims as it bars their relitigation on collateral review absent extraordinary circumstances not presented by Aigbekaen's filings. *See United States v. Dyess*, 730 F.3d 354, 360 (4th Cir. 2013) ("[I]t is well settled that [a defendant] cannot 'circumvent a proper ruling . . . on direct appeal by re-raising the same challenge in a § 2255 Motion.'"); *see also TFWS, Inc. v. Franchot*, 572 F.3d 186, 191 (4th Cir. 2009) ("The law of the case doctrine 'posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'") (quoting *United States v. Aramony*, 166 F.3d 655, 661 (4th Cir. 1999)). Even to the extent that their prior litigation does not foreclose their consideration at this time, a review of these claims shows that they do not establish cognizable claims for § 2255 relief.

### 1. *Claim 1: Warrantless Border Search and Seizure*

Aigbekaen's first § 2255 claim again challenges the warrantless May 19, 2015 seizure of his laptop and cellphone by United States Custom and Border Protection officers at John F. Kennedy International Airport. *See Aigbekaen*, 943 F.3d at 718. This claim was also, however, the primary issue raised in Aigbekaen's direct appeal. *See generally id.* Accordingly, the Court cannot conclude that it provides viable grounds for collateral relief without disregarding the Court of Appeal's conclusion that it did not serve as grounds for relief on direct appeal. *Dyess*, 730 F.3d at 360. A brief review of that decision shows why Aigbekaen's attempts to relitigate that claim

14

now are unavailing because they are either direct or indirect attacks on the Court of Appeals' reasoned conclusions.

### a. The Court of Appeals' Decision

In affirming Aigbekaen's conviction, the Court of Appeals extensively analyzed the relationship between the border-search exception to the warrant requirement and the modern practice of forensic searches of electronic devices seized at the border. In doing so, it began with the premise that "[i]f the border exception applies to the May 2015 forensic searches of Aigbekaen's devices, these searches (like the forensic search in *Kolsuz*)[8] were sufficiently intrusive to be 'nonroutine' and so required some level of individualized suspicion." *Aigbekaen*, 943 F.3d 720. The Court of Appeals further concluded that the Government facially satisfied this requirement, noting that "when Aigbekaen landed at the airport with his MacBook Pro, iPhone, and iPod in tow, HSI agents had not only reasonable suspicion but probable cause to suspect that he had previously committed grave *domestic* crimes." *Id.* at 721 (emphasis in original).

The constitutional infirmity in this search did not turn, therefore, on whether the Government had sufficiently particularized suspicion but instead that "the warrantless searches of Aigbekaen's devices in May of 2015 lacked the *requisite nexus* to the recognized historic rationales justifying the border search exception." *Id.* (emphasis added). As the Court of Appeals succinctly stated, the constitutional question was not whether the Government had individualized suspicion, but "of *what* must the Government have individualized suspicion for the border search exception to apply?" *Id.* at 720 (emphasis in original). Answering this question, the Court of Appeals held the search violated the Fourth Amendment because "holding the border search

---

[8] *United States v. Kolsuz*, 890 F.3d 133 (4th Cir. 2018).

exception applicable here, based simply on the Government's knowledge of domestic crimes, would 'untether' that exception from its well-established justifications." *Id.* at 721.

Having concluded that the forensic search of Aigbekaen's devices was unreasonable, the Court of Appeals further considered whether the good-faith exception to the exclusionary rule nonetheless permitted introduction at trial of the evidence obtained from that search. *Id.* at 725. In concluding that it did, the Court of Appeals explained that: "[T]he fruits of 'a search conducted in reasonable reliance on binding precedent is not subject to the exclusionary rule,' as that rule is designed 'to deter *future* Fourth Amendment violations.'" *Id.* (emphasis in original) (quoting *Davis v. United States*, 564 U.S. 229, 236–37 (2011)). Applying this principle, the Court of Appeals concluded that the 2015 search was in good faith because ·

> [o]nly in 2018 did this court recognize that a 'search initiated at the border could become so attenuated from the rationale for the border search exception that it no longer would fall under that exception' and so require a warrant. . . . And only today have we applied that principle to hold unconstitutional such an attenuated, warrantless, nonroutine forensic search at the border.

*Id.* After applying the good faith exception, the Court of Appeals affirmed Aigbekaen's conviction. *Id.* at 725–26. Aigbekaen attempts to challenge this affirmance in two ways.

### b. *Ineffective Assistance of Appellate Counsel*

First, Aigbekaen argues that his appellate counsel was ineffective for failing to provide the Court of Appeals with a notice of supplemental authority following the Ninth Circuit's decision in *United States v. Cano*, which had declined to apply the good-faith exception in the border-search context. 934 F.3d 1002, 1021–22 (9th Cir. 2019);[9] (*see also* ECF No. 467 at 3.) This claim is a direct attack on the Court of Appeals' considered resolution of the applicability of the good-faith exception because it necessarily assumes that the Court of Appeals was *incorrect* and that, had it

---

[9] The Court assumes this is the "9th Circuit rul[ing]" referenced in Aigbekaen's filings based on his description and the timing implied by the need to file a notice of supplemental authority. (ECF No. 467 at 3.)

only the benefit of *Cano*, it would have resolved the issue differently. *See United States v. Harden*, 45 F. App'x 237, 240 (4th Cir. 2002) (rejecting § 2255 movant's "argument that he received ineffective assistance of appellate counsel [ ] based on the belief that we wrongly decided his direct appeal. He essentially contends that if his attorney had cited different cases and filed a petition for rehearing, Harden's appeal would have been successful. Because Harden cites no intervening change in the law, he cannot challenge this court's ruling on his direct appeal."); *cf. United States v. Rangel*, 781 F.3d 736, 745 (4th Cir. 2015) ("To show prejudice in the context of appellate representation, a petitioner must establish a 'reasonable possibility . . . he would have prevailed on his appeal' but for his counsel's unreasonable failure to raise an issue.") (quoting *Smith v. Robbins*, 528 U.S. 258–86 (2000)). Even were this Court willing to entertain this assumption as a matter of logic, it would be prohibited from doing so as a matter of law given the well-established precedent that a defendant "will not be allowed to recast, under the guise of collateral attack, questions fully considered by [the court of appeals on direct appeal]." *Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976) (citation omitted); *see United States v. Roane*, 378 F.3d 382, 398 n.7 (4th Cir. 2004) ("[D]efendant cannot relitigate [in a § 2255 Motion] issues previously rejected on direct appeal.") (citing *Boeckenhaupt*, 537 F.2d at 1183); *United States v. Linder*, 562 F.3d 391, 396 (4th Cir. 2009) (collecting authorities) ("[Defendant] may not circumvent a proper ruling . . . on direct appeal by re-raising the same challenge in a § 2255 motion.").[10] The Court therefore cannot conclude that Aigbekaen received ineffective assistance of appellate counsel on this basis.

---

[10] Dissenting from a recent, unpublished decision, Chief Judge Gregory opined that *Boeckenhaupt* may not bar collateral review of an issue raised on direct appeal if the record suggests that the issue was not "fully considered" by the appellate court. *See United States v. Caro*, 733 F. App'x 651, 664 (4th Cir. 2018) (Gregory, C.J., dissenting). That said, his analysis was limited to the proposition that the court of appeals "cannot have fully considered a *Brady* claim when the defendant presents *new evidence* on collateral review[.]" *Id.* (internal quotation marks omitted) (emphasis added). Here, what Aigbekaen uses to attack the Court of Appeals' prior judgment is neither new nor evidence, and accordingly does not permit collateral review even under the reading of *Boeckenhaupt* outlined in *Caro*.

### c.  Ineffective Assistance of Trial Counsel

Second, Aigbekaen argues that he received ineffective assistance of trial counsel with respect to the border search because trial counsel failed to preserve a challenge to the ongoing validity of the seizure of his electronic devices. (ECF No. 467 at 2.)[11]  In other words, counsel should have argued that even if the seizure of Aigbekaen's devices was "lawful at its inception [it] nevertheless violate[d] the Fourth Amendment because its manner of execution unreasonably infringe[d] possessory interests." *United States v. Pratt*, 915 F.3d 266, 271 (4th Cir. 2019) (quoting *United States v. Jacobsen*, 466 U.S. 109, 124 (1984)).  Although appellate counsel raised this argument in supplemental briefing, the Court of Appeals concluded that because "Aigbekaen opted neither to press this claim before the district court nor to raise in his opening brief to this court[,] . . . [it] decline[d] to address this forfeited claim." *Aigbekaen*, 943 F.3d at 725 n.10.

Aigbekaen argues that his trial counsel was ineffective for failing to preserve this claim and that appellate counsel was ineffective for failing to raise it in his initial brief.  This argument is at least facially procedurally proper because "as a general rule, claims of ineffective assistance of counsel must be raised in a 28 U.S.C. § 2255 motion rather than on direct appeal." *United States v. Benton*, 523 F.3d 424, 435 (4th Cir. 2008).  However, a review of this claim suggests that Aigbekaen is merely using this argument as a vehicle to rehash his challenges to the initial validity

---

[11] In later correspondences, Aigbekaen also argues that the Government has failed to respond to this aspect of his claim, thereby conceding the point and entitling him to summary judgment. (*See, e.g.*, ECF No. 515.) As an initial matter, the Government's Opposition is responsive to this point, arguing that this Court has no authority to revisit the legality of the border search given the Court of Appeals' disposition of this issue. (*See* ECF No. 505 at 30.) Even had the Government failed to address this argument, it is well established that "[a]lthough the failure of a party to respond to a summary judgment motion may leave uncontroverted those facts established by the motion, the moving party must still show that the uncontroverted facts entitle the party to 'a judgment as a matter of law' [and the] failure to respond to the motion does not automatically accomplish this." *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993). Thus, to obtain relief, Aigbekaen would still be required to establish the legal merits of his claim. As explained *infra*, he has not done so.

of the warrantless seizure and search of his electronic devices. Specifically, he argues that his

devices were seized

> [W]ithout a warrant, without probable cause and no reasonable suspicion
> whatsoever. The Fourth Circuit ruled on November 21, 2020 that the seizure was
> unconstitutional and that the Government lacked reasonable suspicion for the
> seizure. There is precedent that forbids this type of seizure from the Supreme Court
> in *United States v. Place* and from this Circuit, *United States v. Pratt*, 915 F.3d 266,
> 271–273 (4th Cir. 2019).

(ECF No. 467 at 2.)[12] This argument squarely attacks the Court of Appeals' conclusion that the

good-faith exception precluded suppression based on the manner in which Aigbekaen's devices

were seized in the first instance. Indeed, a challenge to the manner of a seizure's execution

presumes that the seizure is *"lawful at its inception* [but] nevertheless violate[s] the Fourth

Amendment because its manner of execution unreasonably infringes possessory interests." *Pratt*,

915 F.3d at 271 (emphasis added). Aigbekaen's arguments, which attack the lawfulness of the

seizure *ab initio* simply do not articulate such a claim and instead attempt to launder his non-

cognizable disputes with the Court of Appeals' holding while citing *Pratt*.

Even considering *Aigbekaen*'s "manner of execution" framework, Aigbekaen cannot

establish that his counsel was deficient for incompletely litigating this aspect of the seizure

because, at the time this claim was litigated at the Motions Hearing, no precedent supported the

viability of such a challenge. To establish a claim for ineffective assistance of counsel, Aigbekaen

must show: "(1) that [his attorney's] performance fell below an objective standard of

reasonableness and (2) that [he] suffered prejudice as a result." *United States v. Mikalajunas*, 186

F.3d 490, 493 (4th Cir. 1999). "A lawyer does not perform deficiently by failing to raise novel

arguments that are unsupported by then-existing precedent. . . . Nor does counsel fall below

---

[12] This argument also misrepresents the Court of Appeals' ruling which held, in relevant part, that at the time of the
seizures "HSI agents had not only reasonable suspicion but probable cause to suspect that [Aigbekaen] had previously
committed grave domestic crimes." *Aigbekaen*, 943 F.3d at 721 (emphasis omitted).

*Strickland's* standard of reasonableness by failing to anticipate changes in the law, or to argue for an extension of precedent." *United States v. Morris*, 917 F.3d 818, 823 (4th Cir. 2019) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)); *(see also* ECF No. 111 (Motions Hearing held on August 11, 2016).) It was not until two years after Aigbekaen's trial, in *United States v. Kolsuz*, the Fourth Circuit suggested "an extended confiscation of a traveler's phone—quite apart from any search undertaken—might constitute an unreasonable seizure of property for Fourth Amendment purposes." 890 F.3d 133, 141 (4th Cir. 2018). Even then, the Fourth Circuit declined to "address whether and under what circumstances" this may be the case. *Id.* To this day, it does not appear that any court in this Circuit has invalidated a forensic search on these grounds. *Cf. United States v. Nkhongo*, Crim. No GJH-18-0468, 2021 WL 4421883, at *2, *6 (D. Md. Sept. 27, 2021) (affirming forensic search of electronic devices seized on March 20, 2017 and not returned to defendant until approximately May 9, 2017).

Finally, even if Aigbekaen could establish deficient performance, he has not demonstrated prejudice because his manner of execution claim would not be viable. Even following *Kolsuz*, courts have concluded that the "border search of a device, which may take days 'or perhaps weeks or even months,' is permissible with particularized suspicion." *Nkongho*, 2021 WL 4421883, at *6 (quoting *United States v. Cotterman*, 709 F.3d 952, 961 (9th Cir. 2013)). Applying these principles, at least one other court in this district has upheld a forensic search where a defendant's devices were seized on March 20, 2017 and not returned to him until May 9, 2017—nearly two months later. *Id.* at *2; *see also Kolsuz*, 890 F.3d at 136, 141 (declining to consider reasonableness of "a month-long, off-site forensic analysis"). Indeed, the court in *Nkongho* focused its analysis exclusively on the nine-day delay between the seizure of the phone and the obtaining of a warrant to search it—apparently assuming that the reasonableness of the subsequent 40-day seizure was

20

beyond dispute. *Nkongho*, 2021 WL 4421883, at *6.[13]  Here, Aigbekaen offers no reason for

concluding that the fourteen-day seizure to forensically search his devices was unreasonable nor

grounds for believing that this seizure may have been unreasonable along some other analytical

axis. For all these reasons, Aigbekaen's challenges to the May 19, 2015 seizure and forensic search

of his devices do not warrant § 2255 relief.

### 2. Claim 2: Constructive Amendment of the Indictment

Aigbekaen's second claim argues that his conviction was invalid because the Court's jury

instructions worked a constructive amendment of the indictment. (ECF No. 467 at 3.) "When the

government, through its presentation of evidence and/or its argument, or the district court, through

its instructions to the jury, or both, broadens the bases for conviction beyond those charged in the

indictment, a constructive amendment—sometimes referred to as a fatal variance—occurs."

*United States v. Randall*, 171 F.3d 195, 203 (4th Cir. 1999). Aigbekaen argues that a constructive

amendment occurred with respect to his charge and conviction under 18 U.S.C. § 1591(a) because

the Court instructed the jury that "[i]n a prosecution under subsection (a)(1) in which the defendant

has a reasonable opportunity to observe the [1591(a) victim] . . . the Government need not prove

that the defendant knew, or recklessly disregarded the fact, that the person had not attained the age

of 18 years." 18 U.S.C. § 1591(c).  Other circuit courts have held that this instruction

constructively amends an indictment *unless* the indictment returned by the grand jury contains the

"reasonable opportunity to observe" language found in 18 U.S.C. § 1591(c). *See United States v.*

*Phea*, 953 F.3d 838, 842 (5th Cir. 2020) (finding constructive amendment where "superseding

---

[13] Because both the seizure and forensic search of Aigbekaen's devices were executed without a warrant, there is no similar warrant-seeking delay to challenge despite Aigbekaen's suggestion that this may have been a cognizable grounds for suppression. (*See* ECF No. 471 at 3.)

indictment made no reference to subparagraph (c) or its 'reasonable opportunity to observe' language").

This argument was raised in both Aigbekaen's Pro Se Appellate Brief and his Rule 33 Motion and rejected by both this Court and the Court of Appeals. (*See* ECF No. 411 at 9); Pro Se Appellate Brief at 23; *Aigbekaen*, 943 F.3d at 725 n.10. To the extent that these prior assessments do not preclude this claim outright, it is meritless for a straightforward reason: The relevant count in the Indictment (Count Three) does contain the § 1591(c) language, charging that Aigbekaen violated § 1591(a) "knowing, and in reckless disregard of the fact, and *having had a reasonable opportunity to observe* 'Victim 1,' that 'Victim 1' had not attainted the age of 18 years[.]" (ECF No. 1 at 9 (emphasis added).) While the Indictment does not *charge* Aigbekaen under § 1591(c), other circuits have concluded that this belt-and-suspenders approach is unnecessary and would likely be misleading as "Subsection (c) [ ] does not state a separate offense; it expressly refers to 'prosecutions under subsection (a)(1)' and it provides 'an alternative to proving any mens rea with regard to the defendant's awareness of the victim's age.'" *United States v. Graham*, 707 F. App'x 23, 27 (2d Cir. 2017) (citations omitted). *But cf. United States v. Curry*, 723 F. App'x 314, 320 (6th Cir. 2018) ("Arguably, the indictment should have cited [§ 1591(c)]. An error in citation, however, is not sufficient to render an indictment invalid."). Given that the Indictment expressly uses the "reasonable opportunity to observe" language, the Court's later jury instruction to the same effect did not constructively amend the indictment.

In later filings, Aigbekaen concedes that the Indictment contains the phrase "reasonable opportunity to observe" but clarifies that his argument is that instructing a jury on the "reasonable opportunity to observe" *mens rea* works a constructive amendment of the indictment unless the indictment includes the entire statutory text of § 1591(c). (*See* ECF No. 554 at 1.) This argument

fares no better. First, the case Aigbekaen cites does not support his argument. *See United States v. Davis*, 854 F.3d 601 (9th Cir. 2017). The indictment in that case charged only that the defendant's conduct was "knowing or in reckless disregard of the fact that the person had not attainted the age of 18 years"—omitting entirely any reference to § 1591(c)'s reasonable opportunity to observe language. *Id.* at 604. Second and more generally, a "variance does not violate a defendant's constitutional rights unless it prejudices the defendant [ ] by surprising him at trial and hindering the preparation of his defense." *Randall*, 171 F.3d at 203. Given that the Indictment plainly stated that Aigbekaen had a reasonable opportunity to observe the victim, it is not clear how argument or instruction to the same effect at trial would have surprised or otherwise prejudiced the defense. *Id.* ("[N]ot all differences between an indictment and the proof offered at trial, rise to the 'fatal' level of a constructive amendment."); *cf. also United States v. Lockhart*, 844 F.3d 501, 515 (5th Cir. 2016) ("The essential element at issue [in § 1591 constructive amendment cases] is § 1591's scienter requirement.").

The Court's conclusion that this claim is meritless also forecloses Aigbekaen's related argument that his trial and appellate counsel were ineffective for not pursuing arguments to this effect. (ECF No. 467 at 4); *see also Rangel*, 781 F.3d at 745 ("To show prejudice in the context of appellate representation, a petitioner must establish a 'reasonable possibility . . . he would have prevailed on his appeal' but for his counsel's unreasonable failure to raise an issue.") (quoting *Smith*, 528 U.S. at 285–86).

### 3.  *Claim 3: Sentencing Errors*

Aigbekaen's third claim argues that the Court erroneously applied certain sentencing enhancements (based on his leadership and the involvement of a vulnerable victim);[14] that trial

---

[14] In some filings, Aigbekaen appears to argue that the U.S.S.G. Sections for these enhancements were changed and no longer apply to the facts of his conviction. (*See* ECF No. 460 at 1 ("There are also [ ] changes to the 2018

counsel was ineffective for failing to object to these enhancements; and that appellate counsel was ineffective for not raising these issues on appeal. (ECF No. 467 at 5.) He also avers that both trial and appellate counsel were ineffective for failing to challenge the sentencing disparity between Aigbekaen and his co-defendant Marcell Greene. (*Id.*) As an initial matter, it is not clear that this claim can be raised for collateral review as "[t]he language of § 2255 makes clear that not every alleged sentencing error can be corrected on collateral review." *United States v. Foote*, 784 F.3d 931, 932 (4th Cir. 2015). Specifically, "if the alleged sentencing error is neither constitutional nor jurisdictional, a district court lacks authority to review it unless it amounts to 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Id.* (quoting *Davis v. United States*, 417 U.S. 333, 346 (1974)). "[A] misapplication of the [Sentencing Guidelines] typically does not constitute a miscarriage of justice[,]" *United States v. Mikalajunas*, 186 F.3d 490, 496 (4th Cir. 1999), and thus, "[b]arring extraordinary circumstances . . . an error in the application of the Sentencing Guidelines cannot be raised in a § 2255 proceeding." *United States v. Pregent*, 190 F.3d 279, 283–84 (4th Cir. 1999). Aigbekaen has not shown that the sentencing errors he cites constitute "extraordinary circumstances" for several reasons.

First, contrary to Aigbekaen's contention, application of these enhancements (and several others) was fully and effectively litigated by his trial counsel at sentencing. (*See* ECF No. 262 at 116–124.) Second, while these claims were not raised by appellate *counsel*, they were put before the Court of Appeals by Aigbekaen's *pro se* supplemental briefing. *See* Pro Se Appellate Brief at

---

amendment. The points applied for enhancements are no longer applicable[.]").) However, the relevant sections for vulnerable victim (§ 3A1.1) and leadership (§ 3B1.1) enhancements have not been amended since November 1, 2010 and November 1, 1993, respectively. *See* U.S. Sent'g Guidelines Manual, Amend. 742 (U.S. Sent'g Comm'n Nov. 1, 2010); U.S. Sent'g Guidelines Manual, Amend. 500 (U.S. Sent'g Comm'n Nov. 1, 1993). Because there appears to be no factual basis for this argument, the Court does not consider the doubtful proposition that a Guidelines amendment could form the basis of § 2255 relief. *Cf. Gray v. United States*, Crim. No. RBJ-07-0122, 2013 WL 1217949, at *5 (E.D.N.C. Mar. 6, 2013) (internal quotation marks and citations omitted) ("Courts recognize that a motion pursuant to 18 U.S.C. § 3582(c) is the appropriate motion to be made for a sentence reduction based on a Guideline amendment, not a motion to vacate under 28 U.S.C. § 2255.").

32 ("The court erred in applying various guidelines amendments an in sentencing appellant to significantly more time than the more-culpable co-defendants."). In affirming, the Court of Appeals "examined [these] contentions and [found] no reversible error." *Aigbekaen*, 943 F.3d at 725 n.10. Third, even if the application of these enhancements was erroneous, the Court made clear at sentencing that "even if [it] had calculated the sentencing guidelines differently in this case . . . [it] would nonetheless have imposed a sentence of 15 years of imprisonment" based on a consideration of the 18 U.S.C. § 3553(a) factors and "not giving the sentencing guidelines [ ] significant influence in this case[.]" (ECF No. 262 at 178.) Thus, Aigbekaen has not shown extraordinary circumstances because he has not shown (1) that the Court's conclusion was erroneous or (2) that any putative errors would have affected his sentence. *See Foote*, 784 F.3d at 940 (explaining that "the miscarriage of justice exception in [the post-conviction] context has historically been 'tied to the petitioner's innocence.'"). Even to the extent this claim was cognizable, the same analysis would preclude Aigbekaen from establishing the prejudice prong of his ineffective assistance of counsel claims.

### 4. *Claim 4: Sufficiency of the Evidence*

Aigbekaen's fourth claim is that there was insufficient evidence to sustain his conviction because "[t]he Government did not prove beyond a reasonable doubt or even [a] preponderance of the evidence that the defendant knew the victim was under the age of 18[,]" and that his counsel was ineffective for failing to raise this claim on appeal. (ECF No. 467 at 6.) This claim has already been raised and rejected post-trial both by this Court and the Court of Appeals. (*See* ECF No. 345 at 2); Pro Se Appellate Brief at 26.

Even to the extent this claim is not barred due to its prior consideration, it is meritless. As discussed with respect to Aigbekaen's claim of a constructive amendment—the Indictment in this

case included the "reasonable opportunity to observe" language from 18 U.S.C. § 1591(c). So

charged, the Government may establish a violation under 1591(a) by proving beyond a reasonable

doubt that the defendant had a reasonable opportunity to observe the victim and if the Government

does so, it "need not prove that the defendant knew, or recklessly disregarded the fact, that the

person had not attained the age of 18 years." *Id.* Thus, the Court's observation during sentencing

that it was "not persuaded beyond a reasonable doubt, certainly, but not even by a preponderance

that the government proved [actual knowledge of age] during this trial" is simply not relevant to

determining whether the Government met its burden of proof at trial. (ECF No. 262 at 82.)

Because this claim is meritless, counsel's failure to argue it was not deficient performance or

prejudicial.

### 5.  *Claim 5: Commenting and Failure to Testify and Witness Vouching*

Aigbekaen's fifth claim relates to allegedly improper arguments by the Government

commenting on his failure to testify and engaging in prohibited witness vouching. (ECF No. 467

at 6.) These claims were among the many raised by Aigbekaen to the Court of Appeals and found

not to constitute reversible error. Pro Se Appellate Brief at 21–22; *Aigbekaen,* 943 F.3d at 725

n.10. To the extent that the Court of Appeals' rejection of these claims does not preclude this

Court from considering them, it too finds them unavailing.

As to the first argument, Aigbekaen cites to a statement by the prosecutor that Aigbekaen

". . . did not deny it." (ECF No. 467 at 6.) In context, the full statement is: "Okay. Let's talk

about age. Now, as Mr. Maddox said, Tanika Thomas confronted the defendant about trafficking

an underage girl, he didn't deny [it]."[15] (*See* ECF No. 505-17 at 75.) In determining whether this

statement amounted to commenting on Aigbekaen's failure to testify, the Court must assess

---

[15] Aigbekaen's filing before the Court of Appeals also cites this full passage. Pro Se Appellate Brief at 22.

whether the language "used manifestly intended to be, or was [ ] of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify?" *United States v. Francis*, 82 F.3d 77, 78 (4th Cir. 1996) (internal quotation marks and citation omitted). "[C]onsidering . . . the context in which the comment was made[,]" the answer in this case is plainly no. *Id.* Rather, as the Government points out, this statement merely shows that "Defendant had no response *during the time of the conspiracy* when confronted by Tanika Thomas" irrespective of the fact that he later did not testify. (ECF No. 505 at 36 (emphasis in original).) This statement was plainly permissible as "no Fifth Amendment violation inheres in comments on a defendant's decision to remain silent in a context outside the legal process." *United States v. Taylor*, 54 F.3d 967, 979 (1st Cir. 1995).

Also unproblematic are the statements Aigbekaen argues amounted to improper vouching for certain Government witnesses. "Vouching occurs when a prosecutor indicates a *personal* belief in the credibility or honesty of a witness[.]" *United States v. Sanchez*, 118 F.3d 192, 198 (4th Cir. 1997) (emphasis added). In contrast, "[p]resenting evidence on a witness' obligation to testify truthfully . . . and arguing that this gives the witness a strong motivation to tell the truth is not, by itself, improper vouching." *United States v. Jones*, 471 F.3d 535, 543 (4th Cir. 2006) (discussing vouching in context of a plea agreement); *see also United States v. Wilkes*, 662 F.3d 524, 540 (9th Cir. 2011) ("Prosecutors may [ ] 'argue reasonable inferences based on the evidence, including that one of the two sides is lying.'"). Here, the statements Aigbekaen argues constitute improper vouching are the prosecution's rebuttal arguments related to Mr. Perez that "[h]e has no dog in this fight. He has no motive to lie[,]" and Ms. Ziegler that she "barely knows the defendant. . . . She has no motive to lie." (ECF No. 505-17 at 70.)[16] This does not constitute vouching. The

---

[16] These statements were identified in Aigbekaen's *pro se* supplemental briefing. Pro Se Appellate Brief at 21–22. The pertinent amendment to his § 2255 Motion includes no citations to any other arguments. (ECF No. 467 at 6.)

prosecution expressed no personal belief in either witnesses' credibility and instead argued that the evidence suggested that the witness had no motive to lie. Because it was not improper vouching, trial counsel was not ineffective for failing to object to this line of argument.

### 6. *Claim 6: Facebook Warrant*[17]

Aigbekaen's sixth claim is that appellate counsel was ineffective for failing to appeal the denial of his motion to suppress evidence obtained from an August 2015 warrant for his Facebook account (the "Facebook Warrant") after this Court commented at the suppression hearing "that the evidence put forth for a [F]acebook warrant was 'a little thin[.]'" (ECF No. 467 at 6); *Aigbekaen*, 943 F.3d at 724 n.9.[18] "Effective assistance of appellate counsel does not require the presentation of all issues on appeal that may have merit . . . and we 'must accord counsel the presumption that he decided which issues were most likely to afford relief on appeal[.]'" *Lawrence v. Branker*, 517 F.3d 700, 709 (4th Cir. 2008) (quoting *Bell v. Jarvis*, 236 F.3d 149, 164 (4th Cir. 2000) (en banc)). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Id.* (internal quotation marks and citation omitted). Here, the record conclusively establishes that a challenge to the Facebook Warrant is not clearly stronger than the appeal of the May 2015 border search for two reasons.

First, the Court's comment that the evidence supporting probable cause was "a little thin" does not suggest a viable claim for suppressing the evidence obtained from the Facebook Warrant. Despite this comment, the Court denied in full the relevant motion to suppress, concluding that the

---

[17] Because Aigbekaen casts this argument solely as a claim of ineffective assistance of appellate counsel, the Court need not consider whether it is procedurally defaulted based on his failure to raise it on direct appeal. *See Noble v. Barnett*, 24 F.3d 582, 586 n.4 (4th Cir. 1994) (citation omitted) ("[C]onstitutionally ineffective assistance of counsel is cause *per se* in the procedural default context[.]"). The failure to establish ineffective assistance of counsel, of course, also means that procedural default is an additional reason that this claim fails on collateral review.

[18] In his Rule 33 Motion, Aigbekaen argued that evidence obtained from the Facebook warrant should be suppressed because that warrant lacked sufficient particularity. (ECF No. 346 at 3.) This argument was rejected by the Court, and Aigbekaen does not appear to continue to press it in his § 2255 Motion.

search *was* supported by probable cause. (*See* ECF No. 139 at 2.) Moreover, even assuming that the warrant was unsupported by probable cause, the good-faith exception would have precluded suppression. It is well established that "searches conducted 'pursuant to a warrant will rarely require any deep inquiry into reasonableness, for a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search.'" *United States v. Perez*, 393 F.3d 457, 461 (4th Cir. 2004) (quoting *United States v. Leon*, 486 U.S. 897, 922 (1984)). Of the limited circumstances where reliance would not "qualify as objectively reasonable[,]" the only one even possibly suggested by the Court's comment is that the "affidavit [was] so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable[.]" *Id.* (internal quotation marks and citation omitted). However, the Court's comment that the evidence was a "little thin" did not imply that the affidavit for the Facebook Warrant was devoid of probable cause—particularly given that it ultimately concluded that the Facebook Warrant was valid. Appellate counsel reviewing this record would not believe that an appeal related to the Facebook Warrant was "clearly stronger" than an appeal of the border search.

Second, the interrelated nature of the two searches substantiates the strategic decision to focus the appeal on the May 2015 border search. As the Court of Appeals concluded, "we cannot assume in the first instance that the August 2015 warrants [including the Facebook Warrant] were not prompted by the May 2015 warrantless searches." *Aigbekaen*, 943 F.3d at 725. Given this, showing that the May 2015 search was unlawful likely would have required a remand to "consider whether, pursuant to the 'independent source' doctrine, the officers in this case 'would have sought [the Facebook Warrant]' even if they had not conducted the unlawful searches." *United States v. Hill*, 776 F.3d 243, 245 (4th Cir. 2015) (quoting *United States v. Bullard*, 645 F.3d 237, 244 (4th Cir. 2011)). This development could reasonably have been seen by appellate counsel as necessary

to permit an effective challenge to the Facebook Warrant. This is especially so considering this Court's initial analysis—which presumed the validity of the May 2015 search—did not suggest a particularly compelling case for suppression given that, at a minimum, the officer's reliance on the Facebook Warrant was in good faith. *But see Aigbekaen*, 943 F.3d at 722 ("[I]n August of 2015, HSI secured warrants to search both the MacBook Pro and the iPhone, relying almost exclusively on evidence that was in agents' possession before Aigbekaen arrived at the airport in May."). Although the appellate challenge to the May 2015 searches was ultimately unsuccessful, appellate counsel was not deficient in focusing the appeal on this more promising, threshold issue.

### 7. *Claim 7: Hotel Room Search*

Aigbekaen similarly claims that appellate counsel was ineffective for failing to appeal this Court's denial of his motion to suppress evidence seized without a warrant from a Homewood Suites in Belcamp, Maryland on or about April 12, 2015. (*See* ECF Nos. 65, 131.) Again, he fails to show why this argument was stronger than those actually raised on appeal. Although this search involved "a complicated story[,]" the gravamen of the Court's analysis in rejecting this Motion was that "the officer did not commence the ultimate sort of final search until after noon, until after check out time." (ECF No. 505-9 at 53.) This conclusion meant that Aigbekaen did not have standing to challenge the search as, in most circumstances, "a guest does not have a reasonable expectation of privacy in his hotel room after his rental period has terminated." *United States v. Kitchens*, 114 F.3d 29, 31 (4th Cir. 1997) (collecting cases). Aigbekaen's § 2255 Motions do not identify any reason that the Court's factual determination was incorrect or that the facts fit into the limited circumstance where "[a] guest may still have a legitimate expectation of privacy even after his rental period has terminated, if there is a pattern of practice which would make that expectation reasonable." *Id.* Aigbekaen's failure to substantiate a colorable appellate issue with respect to this

search means that appellate counsel's decision not to raise this claim on appeal does not constitute deficient performance. *Branker*, 517 F.3d at 709.

### 8.  *Claim 8: Prosecutorial Misconduct*

Aigbekaen's eighth claim reiterates several disputes he has related to alleged prosecutorial misconduct, arguing that the Government (1) committed *Brady* violations; (2) engaged in witness tampering; and (3) altered evidence presented at trial. (ECF No. 467 at 8–10.) These claims were already brought before this Court in Aigbekaen's Rule 33 Motion and found to be unsubstantiated. (*See* ECF No. 411 at 5–7 (denying ECF No. 346).) Aigbekaen also raised these challenges, and other, similar contentions to the Court of Appeals in his *pro se* supplemental briefing. Pro Se Appellate Brief at 19–21; Pro Se Appellate Supplement at 7–11. As noted, the Court of Appeals "examined Aigbekaen's contentions and [found] no reversible error." *Aigbekaen*, 943 F.3d at 725 n.10. In his § 2255 Motion, Aigbekaen provides no new evidence or argument that would warrant revisiting the prior conclusions finding that these claims are unsubstantiated and do not warrant relief.

### 9.  *Claim 9: Legal Innocence*

Aigbekaen's ninth claim is that he is legally innocent of Sex Trafficking of Children under 18 U.S.C. § 1591(a) and Interstate Transportation for Prostitution under 18 U.S.C. § 2421(a). (*See* ECF No. 454 at 1–5; ECF No. 467 at 8–9.) As to the former, he argues that the Supreme Court's decision in *Esquivel-Quintana v. Sessions*, 137 S. Ct. 1562, 1567 (2017), "made the declaration that 'the Federal Generic meaning of a minor is anyone under the age of 16[,]'" and the victim in this case was seventeen. (*See* ECF No. 467 at 8.) He also argues that "[b]oth counsels were also ineffective for failing to challenge these issues." (ECF No. 467 at 9.) Setting aside procedural

defects, this argument fails because the holding in *Esquivel-Quintana* has no effect on the elements required to prove a violation of § 1591(a).

Rather, *Esquivel-Quintana* assessed the meaning of the term "sexual abuse of a minor[,]" which defines a class of offenses that constitute aggravated felonies for purposes related to immigration proceedings. *See generally* 8 U.S.C. § 1101(a)(43)(A). Central to the Supreme Court's analysis of that term was the fact that "Section 1101(a)(43)(A) does not expressly define sexual abuse of a minor, so we interpret that phrase using the normal tools of statutory interpretation." *Esquivel-Quintana*, 137 S. Ct. at 1569. In contrast, 18 U.S.C. § 1591 explicitly defines the relevant category of victims as those who have "not attained the age of 18 years[.]" *See* 18 U.S.C. §§ 1591(a), 1591(c). Given that the statutory text clearly defines the criminal offense, the analysis in *Esquivel-Quintana* has no bearing on Aigbekaen's offense of conviction. *See United States v. Delaney*, App. No. 18-1919, 2022 WL 356731, at *4 (7th Cir. Feb. 7, 2022) (summarily rejecting the applicability of *Esquivel-Quintana* to convictions under 18 U.S.C. §§ 1591(a) and 2243).

With respect to his conviction under § 2421(a), Aigbekaen argues that he lacked the *mens rea* necessary to violate the statute because he was not "aware that driving a motor vehicle across state lines was a federal offense that was punishable by the combined 20-year sentence that was imposed[.]" (ECF No. 454 at 3.)[19] Aigbekaen does not, however, challenge the sufficiency of the

---

[19] Aigbekaen does not explicitly argue that counsel was ineffective for failing to raise this claim or provide other grounds to excuse its procedural default. *Cf. United States v. Pettiford*, 612 F.3d 270, 284 (4th Cir. 2010) (quoting *Mikalajunas*, 186 F.3d at 494) ("To succeed on actual innocence grounds [to establish cause and prejudice for procedural default] 'a petitioner must demonstrate factual innocence of the offense of conviction, i.e., that petitioner did not commit the crime of which he was convicted; this standard is not satisfied by a showing that a petitioner is legally, but not factually innocent.'"). However, because procedural default is non-jurisdictional and Aigbekaen's argument can be readily rejected on the merits, the Court opts for this more conclusive approach. *See United States v. Anjum*, 961 F. Supp. 883, 888 (D. Md. 1997); *see also Yeatts v. Angelone*, 166 F.3d 255, 261 (4th Cir. 1999) ("A federal habeas court thus possesses the jurisdiction to consider a petitioner's constitutional claims that have been procedurally defaulted."); *cf. Horner v. Nines*, 995 F.3d 185, 213 (4th Cir. 2021) ("For these reasons, and with due

evidence at trial which necessarily established, beyond a reasonable doubt, the two elements of the statute: "*first*, that the defendant knowingly transported a person across a state line; and *second*, that the defendant transported the person with the intent that such person engage in prostitution." *United States v. Delgado*, 367 F. Supp. 3d 286, 294 (M.D. Pa. 2019) (emphases in original). This is sufficient, as "the knowledge requisite to [a] knowing violation of a statute is factual knowledge as distinguished from knowledge of the law." *United States v. Mitchell*, 209 F.3d 319, 322 (4th Cir. 2000) (internal quotation marks and citation omitted). Put another way, "the term knowingly merely requires proof of knowledge of the facts that constitute the offense." *Id.* (internal quotation marks and citation omitted). Here, Aigbekaen does not dispute that there was sufficient proof at trial that he knowingly transported the victim or that he intended her to engage in prostitution; he merely avers that he was not "aware that driving a motor vehicle across state lines was a federal offense." (ECF No. 454 at 3.) This does not establish a cognizable claim for vacating his 18 U.S.C. § 2421(a) conviction. *Cheek v. United States*, 498 U.S. 192, 198 (1991) ("The general rule that ignorance of the law or a mistake of law is no defense to criminal prosecution is deeply rooted in the American legal system.") (collecting cases).

### 10. Facially Untimely Claims

In response to this Court's issuance of *Castro* warnings, Aigbekaen filed an additional amendment to his § 2255 Motion on September 21, 2021. (ECF No. 480.) He filed another Motion, this time styled as a Rule 33 Motion, on November 17, 2021 that—based on its substance and timing—this Court construed as a further amendment to his § 2255 Motion. (*See* ECF Nos. 488, 494.) These additional filings primarily reiterated the "core" claims raised in Aigbekaen's first amendment, but also included additional claims not raised before the July 23, 2021, § 2255(f)

---

regard for the principles of finality, we think it is the far better practice for district judges to rule on all grounds presented in a petition.").

deadline. As discussed, these additional claims are barred unless they relate back to a timely claim. *See supra* Part III.A.

In the context of § 2255 Motions, claims "relate[] back under Rule 15(c)(2) when the new claim arises from the 'same core facts in time and type as the timely filed claims.'" *Gray v. Branker*, 529 F.3d 220, 241 (4th Cir. 2008) (quoting *Mayle v. Felix*, 545 U.S. 644, 657 (2004)). Claims do not relate back where they "arise from an entirely separate factual circumstance and create a new and distinct claim." *Id.*; *see also Hillhouse v. Warden*, Civ. No. CMK-03-0142, 2007 WL 1247103, at *11 (E.D. Cal. Apr. 18, 2007) ("The legal theory can change, but, for relation back, the facts may not."). The relation back of novel factual predicates is particularly disfavored where "[t]he claims in [the] motion to amend [are] not overly technical and [ ] could have easily [been included] in [the] original § 2255 motion." *United States v. Pittman*, 209 F.3d 314, 318 (4th Cir. 2000). Applying these principles, few of the untimely claims raised by Aigbekaen are rendered timely by relation back. Moreover, substantive consideration of these claims shows that they are all unmeritorious.

### a. *Claim 10: HSI Office Arrest and Seizures*

Aigbekaen's tenth overall claim is that his arrest at an ICE office in Houston violated his rights under the Fourth and Fifth Amendment. (ECF No. 480 at 6.) As background, following the border search and Facebook Warrant, on August 25, 2015, a grand jury returned the underlying Indictment against Aigbekaen. (*See* ECF No. 1.) Contemporaneously, U.S. Magistrate Judge Nancy K. Johnson authorized search warrants for two of Aigbekaen's devices—an Apple Macbook Pro and an Apple iPhone. (*See* ECF Nos. 505-2, 505-3.)

To effectuate these warrants, Aigbekaen was invited to an HSI field office in Houston, ostensibly to discuss a claim he had made that the laptop and phone seized as part of the border

search had been damaged. (ECF No. 505 at 32.) After arresting Aigbekaen, law enforcement agents also recovered five additional cell phones that he had brought in a satchel. (*See* ECF No. 505-7.) On September 15, 2015, U.S. Magistrate Judge Timothy J. Sullivan issued search warrants for the additional cell phones. (*Id.*) Aigbekaen argues that these seizures were unconstitutional because he "felt like he had no choice but to take the computer to the agents to get it fixed"— which, in his view, was akin to "compelling him to be a witness against himself" in violation of the Fifth Amendment. (ECF No. 480 at 6.) He further claims that, because they amounted to a violation of his Fifth Amendment right against self-incrimination, the seizures were also unreasonable in violation of the Fourth Amendment. (*Id.*) Last, he argues that counsel was ineffective for failing to "focus on the seizure and search that occurred at the Houston HSI office." (*Id.*)

As an initial matter, claims about the constitutionality of Aigbekaen's arrest—which relates to an entirely different factual circumstance than those related to the border search and Facebook Warrant—do not relate back to Aigbekaen's timely filed claims and are therefore barred as untimely. On the merits, these facts plainly fail to articulate a violation of the right against self-incrimination which "is triggered only when the individual is (1) compelled to make a (2) testimonial communication (3) that is incriminating." *El Ali v. Barr*, 473 F. Supp. 3d 479, 522 (D. Md. 2020) (citing *Fisher v. United States*, 425 U.S. 391, 408 (1976)). The most obvious flaw in Aigbekaen's argument is that "whether a statement or act, the testimonial communication '*must itself*, explicitly or implicitly, relate a factual assertion or disclose information' that incriminates." *United States v. Sweets*, 526 F.3d 122, 127 (4th Cir. 2007) (quoting *Doe v. United States*, 487 U.S. 201, 209 (1988)). The facts Aigbekaen cites do not establish that—even if compelled—the act of taking his electronic devices to the HSI office implicitly made any factual assertion or itself

disclosed incriminating information. *Id.* (explaining that the Fifth Amendment does not protect "compelled acts that, while leading to the discovery of incriminating evidence, do not themselves make an incriminating factual assertion") (collecting cases).

To the extent that this does not defeat Aigbekaen's Fourth Amendment claim (which he predicates on the Fifth Amendment violation), it too plainly fails. As the Government explains, even ruses used to circumvent Fourth Amendment safeguards may not render a search unreasonable. *United States v. Alejandro*, 368 F.3d 130, 133 (2d Cir. 2004) (finding ruse utilized to avoid knock and announce rule in effectuating arrest warrant at the home did not render subsequent search unreasonable). A fortiori, the far less intrusive ruse that led Aigbekaen to bring his devices to the HSI field office was not unreasonable under the Fourth Amendment. *Cf. United States v. Raines*, 536 F.2d 796, 800 (8th Cir. 1976) ("[C]onsent, though obtained by ruse, did not interfere with the defendant's Fourth Amendment rights and did not taint the evidence procured thereafter[.]"). Because this claim is meritless, so too is Aigbekaen's argument that counsel was ineffective for failing to raise them.

### b. *Claim 11: Selective and Vindictive Prosecution*

Aigbekaen's eleventh claim argues that his prosecution was both selective and vindictive: selective given that the Government did not prosecute the commercial sex customers involved in this case (ECF No. 480 at 7); and vindictive based on Defendant's challenges to the search and seizure of his electronic devices. (*Id.*) Both claims were raised to the Court of Appeals and found not to constitute reversible error. Pro Se Appellate Brief at 17–18; *Aigbekaen*, 943 F.3d at 725 n.10. In his present filings, Aigbekaen offers no grounds for reconsidering the Court of Appeals' conclusion.

First, Aigbekaen's claim of selective prosecution principally focuses on the non-prosecution of Jose Perez, one of the commercial sex customers who testified at trial. To establish such a claim, a defendant "must produce some evidence making a credible showing that (1) similarly situated individuals of a different race were not prosecuted; and (2) the decision to prosecute was invidious or in bad faith." *United States v. Venable*, 666 F.3d 893, 900 (4th Cir. 2012) (citing *United States v. Olvis*, 73 F.3d 739, 743 (4th Cir. 1996)). Aigbekaen fails to establish the first factor because individuals "are similarly situated when their circumstances present *no distinguishable legitimate prosecutorial* factors that might justify different prosecutorial decisions with respect to them." *Id.* at 900–01 (citation omitted) (emphasis added). As the Government explains, numerous legitimate factors—including Aigbekaen's involvement in "transport[ing] the minor victim across state lines, post[ing] commercial sex advertisements of her on Backpage.com, and arrang[ing] for the minor victim to do commercial sex dates"—distinguish Aigbekaen from the commercial sex customers to whom he argues he is similarly situated. (ECF No. 505 at 40.) Even were this not the case, Aigbekaen provides nothing beyond bald claims that the decision to prosecute him was "invidious or in bad faith." *Venable*, 666 F.3d at 903.

Second, Aigbekaen's claim of vindictive prosecution is similarly unsupported by "a showing sufficiently strong to overcome the presumption of prosecutorial regularity." *United States v. Wilson*, 262 F.3d 305, 315 (4th Cir. 2001). Here, Aigbekaen argues that the decision to indict him was made based on his complaints related to the border search and the damage to his devices that resulted. (ECF No. 480 at 7); Pro Se Appellate Brief at 17–18. However, to make even an initial showing of vindictive prosecution, "the circumstances [of the] case must be sufficiently suggestive of vindictive prosecution that when similar circumstances are presented in other factual contexts, the same conclusion would be suggested." *Wilson*, 262 F.3d at 317–18

37

(citing *United States v. Goodwin*, 457 U.S. 368, 381 (1982)). Applying this standard, the fact that a defendant has objected to investigatory searches and seizures conducted by law enforcement officers does not make the categorical showing necessary to overcome the presumption of prosecutorial regularity. *Cf. Goodwin*, 457 U.S. at 383 (declining to adopt presumption of vindictiveness in circumstance where "prosecutor has no 'personal stake' . . . and thus no reason to engage in 'self-vindication' [based] upon a defendant's [conduct]"). In sum, the Court of Appeals summarily rejected these arguments and Aigbekaen has provided no additional facts for reconsidering the conclusion that they do not warrant relief.

### c. *Claim 12: Failure to Communicate Plea Agreement*

Aigbekaen's twelfth claim, as originally articulated, is that his trial counsel "Joseph Balter was given two different plea offers to show to the defendant but he only brought one of those to the jail" and that, had he been presented with both offers, Aigbekaen "might have plead guilty." (ECF No. 480 at 9.)[20] As noted, the factual record with respect to these claims was developed by the submission of the Balter Affidavit, which stated that both written plea agreements were timely provided to Aigbekaen. (*See* ECF No. 524 at 1–3.) The Government filed a supplemental response taking the position that the Balter Affidavit, combined with the pre-trial *Frye* hearing, foreclosed Aigbekaen's claim as implausible. (*See* ECF No. 534); *see also Merzbacher v. Shearin*, 706 F.3d

---

[20] A version of this claim may have been timely raised in a Motion styled as a Motion for Release on Bail or Recognizance Pending Disposition of § 2255. (*See* ECF No. 471 at 10 (signed July 20, 2021 and filed July 26, 2021)); *United States v. Perry*, 595 F. App'x 252, 252 n.1 (4th Cir. 2015) (explaining that "[u]nder the 'prison mailbox rule'" the time of filing of a document is the date a prisoner "deposit[s] the document in the prison mailing system"). However, the allegations in that document are materially different than those raised in Aigbekaen's filings styled as supplements to his § 2255 and supplemental briefing in response to the Balter Affidavit and the shifting factual predicates for this claim make it difficult to determine to what extent they relate back to this timely motion. It is, however, particularly doubtful that claims regarding a third plea relate back given that Aigbekaen's initial filings explicitly states there existed only two pleas negotiated in this case—both of which were formally recorded at the *Frye* hearing. (*See* ECF No. 471 at 10.) Ultimately, the Court declines to definitively resolve the timeliness of the various permutations of Aigbekaen's plea-deal claims given that, however presented, those claims are unmeritorious. *Cf. United States v. Prescott*, 221 F.3d 686, 688 (4th Cir. 2000) (internal quotation marks and citation omitted) ("[T]he limitations provision of the AEDPA do not speak in jurisdictional terms or refer in any way to the jurisdiction of district courts.").

356, 366–67 (4th Cir. 2013) ("[T]o demonstrate a reasonable probability that he would have accepted a plea, a petitioner's testimony that he would have done so must be credible.").

In response to these filings, Aigbekaen appears to acknowledge that he received two plea agreements, clarifying that "the crux of the ineffective assistance claim is that I did not know or was not advised of the number of years I would be pleading to." (ECF No. 551 at 1.) He also claims that Balter was ineffective for not providing a written copy of the second plea agreement until the day it expired. (ECF No. 553 at 1–2.) Last, Aigbekaen now argues that there was a *third* plea agreement that Balter "failed to convey . . . which would allow [him] to sign only for the conspiracy count, count one." (*Id.* at 2.) None of these three arguments support a claim of ineffective assistance of counsel.

### i.    *Indefinite Plea*

Effective assistance of counsel in plea negotiations is addressed under the *Strickland* rubric: "a petitioner must establish that (1) counsel's performance was deficient and (2) there is a reasonable probability that the deficiency prejudiced the defense." *Merzbacher*, 706 F.3d at 363 (citing *Strickland*, 466 U.S. at 687).

> To show prejudice from ineffective assistance of counsel in a case involving a plea offer, petitioners must demonstrate a reasonable probability that (1) 'they would have accepted the earlier plea offer had they been afforded effective assistance of counsel,' and (2) 'the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it[.]

*Id.* at 366 (quoting *Missouri v. Frye*, 566 U.S. 134, 147 (2012)).

The "crux" of Aigbekaen's claim is that he was only interested in a plea negotiated under Federal Rule of Criminal Procedure 11(c)(1)(C), wherein the parties "agree that a specific sentence or sentencing range is the appropriate disposition of the case,"—and known colloquially as a "(C) plea." However, even assuming trial counsel was ineffective in not obtaining such a plea,

39

Aigbekaen cannot establish prejudice as he cannot show that "the plea would have been entered without . . . the trial court refusing to accept it." *Merzbacher*, 706 F.3d at 366. This is because, as the Court noted in this very case, it does not "take (C) pleas" and instead makes its "own independent sentencing decision[s]." (ECF No. 262 at 125.) Thus, the failure to negotiate these plea terms was not prejudicial because such a plea agreement would not have been accepted by the Court. *See Rodriguez v. Bush*, 842 F.3d 343, 347 (4th Cir. 2016) ("There is, of course, no absolute right to have a guilty plea accepted. A court may reject a plea in the exercise of sound judicial discretion.") (quoting *Santobello v. New York*, 404 U.S. 257, 262 (1971)).

### ii. *Timeliness of Plea*

Aigbekaen also faults his trial counsel based on the fact "that he brought the defendant a copy of the plea agreement that expires at midnight of the same day." (ECF No. 553 at 1 (citing Balter Affidavit).) This contention both misstates the factual representations made in the Balter Affidavit and, even if true, is insufficient to establish deficient performance. Factually, the Balter Affidavit states that, although he was unable to leave a copy of the plea agreement at the time, he met with and fully discussed its terms with Aigbekaen on August 4, 2016—the same day the offer was extended and five days before the expiration of the offer. (*See* ECF No. 524 at 2–3.) Thus, trial counsel plainly satisfied his "duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Frye*, 566 U.S. at 145. Indeed, it does not appear that trial counsel could have satisfied this duty more promptly. Although the written agreement was not provided to Aigbekaen until a few days later, neither Aigbekaen nor the Court have identified any authority suggesting this constitutes deficient performance. *Cf. id.* (concluding that counsel's performance is generally deficient where "defense

40

counsel allowed the offer to expire without advising the defendant or allowing him to consider it [at all]").

Additionally, Aigbekaen's claim that he would have accepted the offer if he had only had additional time to consider that offer is inconsistent with the contemporaneous record. "[T]rial courts may adopt some measures to help ensure against late, frivolous, or fabricated claims . . . after a trial leading to conviction with resulting harsh consequences." *Id.* at 146. Amongst these is providing that "formal offers [ ] be made part of the record . . . before a trial on the merits, all to ensure that a defendant has been fully advised before those further proceedings commence." *Id.* Here, the Court did exactly that, confirming on September 19, 2016, that both written plea agreements had been provided to Aigbekaen and that trial counsel "ha[d] a thorough counseling session" about each plea agreement. (ECF No. 505-10 at 10–11.) In addition, the Court requested that counsel "take a moment [prior to the start of trial] and speak with [his] client and then advise [ ] whether or not your client is interested in responding to one or both of those offers right now[.]" (*Id.* at 11.) Counsel confirmed that Aigbekaen had no interest in either offer despite having more than a month to consider the second, more favorable plea. (*Id.*) Accordingly, his claim that with additional reflection he may have agreed to the second plea agreement is simply not plausible based on his statement that he had no interest in that offer prior to trial. *See Merzbacher*, 706 F.3d at 366–67 ("[I]t is entirely clear that to demonstrate a reasonable probability that he would have accepted a plea, a petitioner's testimony that he would have done so must be credible."); *Cf. United States v. King*, 679 F. App'x 297, 299 (internal quotation marks and citation omitted) ("[T]here is no prohibition against a court making credibility determinations based on competing affidavits in certain circumstances" particularly where "contrary affidavits are so conclusory or implausible as to warrant their outright rejection, or to otherwise dispel the material factual disputes at issue in

41

their case."). In fact, Aigbekaen continues to assert that he was unwilling to plead guilty where the plea agreement included only offense levels rather than a definite term of years. (ECF No. 551 at 1.)

### iii.    Third Plea

Aigbekaen's last plea-related argument is that there was, in fact, a third negotiated disposition discussed under which he would "plea to the conspiracy only [which] would be an exposure to offense level 14 [and] which [he] was willing to sign[.]" (ECF No. 551 at 1–2.) Aigbekaen argues that his trial counsel was ineffective in not reducing this offer to a written plea agreement, ostensibly because "it was too much work to get the agreement in writing." (*Id.* at 2.)

This argument appears to be predicated on a misunderstanding of the legal consequences of this putative third plea; pleading guilty to Count One of the Indictment would not have resulted in Aigbekaen being sentenced at offense level 14 even if that offense level was recommended by the parties. (*See* ECF No. 553 (arguing that counsel "failed to convey an agreement offered by the government which would allow [Aigbekaen] to sign only for the conspiracy count, Count One"); *see also United States v. Martinez-Martinez,* 234 F. App'x 91, 93 (4th Cir. 2007) ("[S]tipulation [ ] made pursuant to Rule 11(c)(1)(B) . . . was not binding on the district court [and] [t]he court was free to adopt the probation officer's recommendation for a sixteen-level enhancement without violating the terms of the agreement.").[21] Rather, as his PSR confirms, the adjusted offense level for that Count was 36. PSR ¶ 34.[22] Accounting for acceptance of responsibility, the final adjusted

---

[21] To the extent that this offense level was stipulated under Rule 11(c)(1)(C) it would have been rejected by this Court under its general practice of refusing to accept (C) pleas; because the stipulated offense level was legally erroneous; and because such an agreement would have been unduly lenient considering the correctly calculated offense level for Count One. *See infra* n. 21; *see also in re United States,* 32 F.4th 584, 594 (6th Cir. 2022) ("[W]e have held that a district court may reject a plea agreement when, for example, the agreement does not adequately reflect the seriousness of the offense."); *United States v. Crowell,* 60 F.3d 199, 205–06 (5th Cir. 1995) ("A court may properly reject a plea agreement based on undue leniency.").

[22] Aigbekaen's conclusion that the offense level would be 14 appears to stem from a misreading of U.S.S.G. § 2G1.1, which provides that the base offense level for "Promoting a Commercial Sex Act" is "34 if the offense of conviction

offense level had he plead to Count One would have been around 34, within the range stipulated by the second, rejected plea agreement. (*See* ECF No. 524-2 (stipulating to a "final adjusted offense level [ ] between 36 and 32").) Thus, even if this third agreement could have been drafted as Aigbekaen claims, it would have been, as a practical matter, nearly equivalent to accepting the second plea agreement.[23] As stated, the record does not support the proposition that Aigbekaen had any interest (and continues to have no interest) in accepting a plea agreement that would have subjected him to an indeterminate but substantial term of imprisonment. *See Walters v. Martin*, 18 F.4th 434, 442 (4th Cir. 2021) (concluding that petitioner was not prejudiced where he "failed to show a reasonable probability he would have accepted the [ ] plea offer"); (ECF No. 551 at 1 ("[T]he crux of the ineffective assistance claim is that I did not know or was not advised of the number of years I would be pleading to . . . I have read both plea agreements again today [and] you can see that there is no specificity as to the amount of years they wanted to plead to.").

To summarize, Aigbekaen's filings raise various factual scenarios regarding the plea negotiations in this case. However, each fails to establish at least one of the following: (1) a credible factual basis for the claim; (2) that Aigbekaen would have accepted the plea offer had it been properly provided to him; or (3) that the Court would have accepted the negotiated disposition outlined in the plea. Each of these failures independently forecloses the merits of his arguments related to ineffective assistance of counsel during plea negotiations.

---

is 18 U.S.C. § 1591(b)(1); or 14, otherwise." Aigbekaen appears to assume that pleading solely to conspiracy under 18 U.S.C. 1594(c) would fall within the lower offense level designated for other offenses of conviction under § 2G1.1. However, the offense levels for conspiracy convictions are determined by U.S.S.G § 2X1.1, which provides that for conspiracy a Court determines "[t]he base offense level from the guideline for the substantive offense[.]" *See also United States v. Wei Lin*, 841 F.3d 823, 825 (9th Cir. 2016) ("The base offense level for a conspiracy to commit sex trafficking is the same as the base offense level for the underlying substantive sex trafficking crime."). As explained, this would result in a far higher offense level than 14 for Count One.

[23] The only material difference would be that such an agreement would not carry the mandatory minimum for a substantive violation of 18 U.S.C. § 1591(b). *Wei Lin*, 841 F.3d at 825. It would not, however, resolve Aigbekaen's stated primary objection that the plea agreement did not provide a definite term of incarceration.

43

### d.  *Claim 13: Legal Innocence under Rosemond*

Aigbekaen's thirteenth claim is that, under the Supreme Court's decision in *Rosemond v.*
*United States*, 572 U.S. 65 (2014), he lacked the *mens rea* necessary to violate 18 U.S.C. § 1591(a)
because he did not know that L. was a minor. (ECF No. 480 at 12.)  Although Aigbekaen's full
articulation of this claim is untimely, the Court concludes that it relates back to his original § 2255
Motion because that Motion raised the factual predicate for this claim—i.e., that Aigbekaen was
innocent of the relevant offense because he did not know L.'s age. (*See* ECF No. 454 at 2 (citing
*Rosemond*, 572 U.S. at 65).)  However, even if this claim is timely raised in a § 2255 Motion, it is
procedurally defaulted because Aigbekaen did not raise it at trial or on direct appeal despite the
fact that these original proceedings took place following the decision in *Rosemond. See Aigbekaen*
*v. Bureau of Prisons*, Civ. No. 19-19844, 2020 WL 255959, at *2 (D.N.J. Jan. 17, 2020)
("Petitioner's *Rosemond* and vagueness claims cannot be brought in this Court under § 2241
because he had a prior opportunity to raise them before the trial court. *Rosemond* was decided on
March 5, 2014; Petitioner was not indicted until August 25, 2015.").

"In order to proceed on a § 2255 motion based on trial errors to which no contemporaneous
objection was made, a convicted defendant must show both (1) 'cause' excusing his procedural
default, and (2) 'actual prejudice' resulting from the errors of which he complains." *United States*
*v. Maybeck*, 23 F.3d 888, 891 (4th Cir. 1994) (some internal quotation marks and citation omitted).
Unlike the majority of his other claims, Aigbekaen does not attribute the cause of this procedural
default to ineffective assistance of counsel, nor does he identify an alternative grounds establishing
cause to excuse the procedural default of this claim. *Cf. Mikalajunas*, 186 F.3d at 493 ("The
existence of cause for a procedural default must turn on something external to the defense, such as
the novelty of the claim or a denial of effective assistance of counsel.").

Even if he could establish cause, Aigbekaen has not shown prejudice because his argument under *Rosemond* is meritless. This is because *Rosemond* assessed the knowledge requirement for a person to be convicted as an aider and abettor under 18 U.S.C. § 2. *See Rosemond*, 572 U.S. at 71 ("The question that the parties dispute, and we here address, concern how those two requirements—affirmative act and intent—apply in a prosecution for aiding and abetting a § 924(c) offense."). Aigbekaen was not convicted solely as an aider or abettor, but rather (at the very least)[24] as a principal to a conspiracy to commit sex trafficking. (*See* ECF No. 189.) As discussed in connection with Claim 4, Aigbekaen does not dispute that the evidence was sufficient to establish the (properly assessed) *mens rea* of a principal, either: (1) knowledge of the victim's age; (2) reckless disregard of the victim's age; or (3) a reasonable opportunity to observe the victim. *See United States v. Pratt*, 821 F. App'x 200, 201 (4th Cir. 2020).

Moreover, even if *Rosemond* were applicable, the "intent requirement [is] satisfied when a person actively participates in a criminal venture with full knowledge of the circumstances constituting the *charged offense.*" *Rosemond*, 572 U.S. at 77 (emphasis added). Here, Aigbekaen did have full knowledge of the circumstances of the charged offense, § 1591(a), because that offense was charged based on his reasonable opportunity to observe the victim. Aigbekaen does not argue that he lacked a reasonable opportunity to observe the victim, so again, his claims arguing he lacked the requisite *mens rea* to be convicted—however framed—do not provide grounds for § 2255 relief.

---

[24] Counts Three to Six charged aiding and abetting liability and the jury did not make special findings related to whether their guilty verdict was as a principal or as an aider or abettor. (*See* ECF Nos. 1 at 9–12, 189.) As noted, even if Aigbekaen were convicted solely as an aider or abettor—a conclusion that seems doubtful based on the trial evidence—he would still satisfy the *mens rea* required by *Rosemond*, i.e. "full knowledge of the circumstances constituting the charged offense." *Rosemond*, 572 U.S. at 77.

45

*e. Claim 14: Mental Incompetence to Stand Trial*

Aigbekaen's fourteenth and final claim is that a September 21, 2021 Institution Disciplinary Process Report confirms that he was mentally incompetent to stand trial. (ECF No. 488, 488-1.) Although Aigbekaen raised his competency claim in his previously-denied Rule 33 Motion, he did not reiterate it in collateral proceedings, and it is barred as untimely under 28 U.S.C. § 2255(f).[25] Further, even considering this claim on the merits, the Report does not sufficiently establish Aigbekaen's incompetence at the time of trial such that the Court can reconsider its prior conclusion that this claim did not warrant relief. *See Graves v. Lioi*, 930 F.3d 307, 318 (4th Cir. 2019) (citations omitted) ("The law-of-the-case doctrine recognizes that 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case' . . . 'unless' one of several exceptions applies, including the subsequent development of 'substantially different evidence.'").

"A person is competent to stand trial if (1) he can consult with his lawyer with a reasonable degree of rational understanding and (2) he has a rational as well as factual understanding of the proceedings against him." *United States v. Powell*, 42 F. App'x 565, 568 (4th Cir. 2002) (citations omitted); *see also United States v. Roof*, 10 F.4th 314, 341 (4th Cir. 2021) (same). The Court previously concluded, based on its own observations of Aigbekaen during the trial, that he satisfied both criteria of competence. (ECF No. 411 at 7.) While Aigbekaen suggests that the Court's prior conclusion rejected his claim that he suffered from a mental illness, that is not the case. Rather, that analysis focused on Aigbekaen's behavior at trial because the "presence of a disease or

[25] Aigbekaen does not argue that the Institution Disciplinary Report affected the § 2255(f) deadline as by setting it to one year from the "date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." *See* 28 U.S.C. § 2255(f)(4). Nor would such an argument have been meritorious. First, while the facts underlying this claim (Aigbekaen's mental illness) are corroborated by the report, they were known to Aigbekaen and the Court at the time of trial. Second, even if the diagnoses in the Report were critical to Aigbekaen's claim, he does not explain why such a diagnosis could not have been more expeditiously obtained through the exercise of due diligence given his long-standing knowledge of his derealization episodes.

condition is not the test for competency." *Powell*, 42 F. App'x at 568. Thus, the Court's prior

conclusion was not that Aigbekaen *did not* suffer from psychiatric episodes, but that he was not

"*presently* [i.e., at trial,] suffering from a mental disease or defect rendering him mentally

incompetent [because] he [was] unable to understand the nature and consequences of the

proceedings against him or to assist properly in his defense." *Roof*, 10 F.4th at 341 (emphasis

added) (internal quotation marks and citations omitted). The September 21, 2021 Report does not

provide substantially different evidence in making this assessment for several reasons.

First, the psychiatric assessment memorialized in the report took place more than four years

after Aigbekaen stood trial, making it of limited probative value as to his mental state during the

trial. (*Compare* ECF No. 159 (beginning jury trial on September 19, 2016), *with* 488-1 at 2

("Aigbekaen was assessed by psychology on 1/19/2021.").)[26]   Second, Aigbekaen's prison

disciplinary record shows that other sanctions were imposed on him both before and shortly after

January 19, 2021 incident that prompted a psychological evaluation, showing that any lapses in

his competence are intermittent. (*See* ECF No. 507.)   Third, while Aigbekaen states that he

continues to struggle with these symptoms, he routinely makes rational filings in this Court

reflecting a profound understanding of both the facts and law related to this case. In sum, while

the September 21, 2021 Report suggests that Aigbekaen's mental illness has progressed to the

point where he is, at times, incompetent to engage in prison administrative proceedings, it does

not provide substantially new evidence that these conditions rendered him incompetent at the time

he stood trial. *Cf. United States v. Herrera*, 481 F.3d 1266, 1273 (10th Cir. 2007) (concluding that

post-trial diagnosis did not raise bona fide doubt of defendant's competency to stand trial where

---

[26] In certain filings, Aigbekaen has also represented that he has "suffer[ed] from a serious deterioration of his health while incarcerated" noting in particular his mental health issues. (*See* ECF No. 471 at 11.) This further counsels against the Court from finding that his 2021 diagnosis is reflective of his mental state in 2016.

motion did not "point[] to anything specific at trial that [defendant] did not understand or could not review, [and alleged] only that the confluence of events raised concerns about [defendant's] condition"). Accordingly, it does not provide grounds for this Court to revisit its prior conclusion that Aigbekaen was competent to stand trial.

### C. *Motion for Sanctions*

In addition to his Motions seeking relief, Aigbekaen has also filed a Motion seeking Sanctions against certain Assistant United States Attorneys who worked on his case. (*See* ECF No. 555.)[27] The grounds for sanctions that Aigbekaen identifies are arguments made (or in some cases, allegedly not made) that Aigbekaen believes are frivolous, false, and only serve to delay this Court's disposition of his putatively meritorious § 2255 Motion. As the prior analysis has shown, however, Aigbekaen's does not raise any claims that warrant collateral relief. In addition, the Court finds no fault in the Government's briefing nor any evidence to substantiate Aigbekaen's claims related to false statements or other misconduct. (*Id.* at 1–3.) For all these reasons, the Court concludes that Aigbekaen's Motion for Sanctions is unmeritorious.

### D. *Certificate of Appealability*

Having concluded that it must deny Aigbekaen's § 2255 Motion, the Court must also consider the propriety of issuing a certificate of appealability. *See* Rule 11(a), Rules Governing Section 2254 and 2255 (Amended Feb. 1, 2010) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). "A certificate of

---

[27] In support of this Motion, Aigbekaen cites to 28 U.S.C. § 1927 which provides that: "Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses and attorneys' fees reasonably incurred because of such conduct." However, "[t]he unambiguous text of § 1927 aims only at attorneys who *multiply* proceedings. It 'does not distinguish between winners and losers[;] . . . [t]he statute is indifferent to the equities of a dispute and to the values advanced by the substantive law.'" *DeBauche v. Trani*, 191 F.3d 499, 511 (4th Cir. 1999) (emphasis in original). Thus, even if Aigbekaen's claims were meritorious, they would not fall within the scope of § 1927 as this statute "focuses on the conduct of the litigation and not on its merits." *Id.*

appealability may issue [ ] only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A prisoner satisfies this standard by demonstrating that reasonable jurists would find that any assessment of the constitutional claims by the district court is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable." *United States v. Lara-Alvarez*, 297 F. App'x 233, 234 (4th Cir. 2008) (citing *Miller-El v. Cockrell*, 537 U.S. 322, 336–38 (2003)). Here, the Court denies a certificate of appealability based on both the procedural and substantive inadequacies of Aigbekaen's claims.

The border search that occurred in the investigation of Aigbekaen undoubtedly raises complex Fourth Amendment questions in a developing area of jurisprudence. That said, those questions were dispositively resolved by the Court of Appeals and, therefore, cannot be reconsidered on collateral review. Aigbekaen's attempts to circumvent this procedural barrier by recasting this claim as a forfeited challenge to their method of execution fares no better; even if that claim was substantively meritorious (which is doubtful), its novelty and speculative character preclude relief when viewed through the lens of a claim for ineffective assistance of counsel.

Aigbekaen's remaining claims are also without merit—often for multiple, independently sufficient reasons. The vast majority of them are procedurally barred having been raised and rejected on direct appeal or in Aigbekaen's Rule 33 Motion; procedurally defaulted; or untimely filed under 28 U.S.C. § 2255(f). Setting aside these procedural defects, consideration of these claims from every angle shows that none has even plausible merit. Having exhaustively reviewed and considered Aigbekaen's dozens of filings on these issues, there are simply no grounds for § 2255 relief that are debatable amongst reasonable jurists. Accordingly, the Court declines to issue a certificate of appealability.

### IV.    *Conclusion*

49

For the foregoing reasons, Aigbekaen's Motion to Vacate Pursuant to 28 U.S.C. § 2255 (ECF No. 454) as supplemented (ECF Nos. 467, 480, 488); Aigbekaen's Motion for Sanctions (ECF No. 555); and all other Motions related to Aigbekaen's § 2255 Motion or correspondences that could be so construed are DENIED and the Court declines to issue a certificate of appealability as to these issues.

DATED this ____ day of August, 2022.

BY THE COURT:

James K. Bredar
Chief Judge